S. Samuel Di Falco, S.
In this proceeding by a claimant to compel payment of her claims the executrix alleges in her answer that one of the claims has been paid, another has been rejected as having no basis in fact and the third is alleged to be not a valid debt of the decedent. The answer states that the existence of the claims has held up the tax proceedings and it prays that the court hear and determine the claims.
(1) The claim for $9,000 for services rendered to the decedent was withdrawn upon the minutes. Upon the last adjournment the matter was marked peremptorily against the claimant. She did not offer any evidence in support of the claim. It is marked withdrawn with prejudice.
(2) Claimant’s right to a deed conveying the land in Anderson County, Texas, is not disputed by the executrix. It is agreed that the property shall be conveyed in accordance with the terms of the agreement between the parties.
(3) The claimant demands the sum of $2,000 in accordance with the terms of an agreement made by the claimant and the decedent on November 25, 1960. The agreement was for the support and maintenance of two minor children. It provided that the decedent would deliver immediately securities in a stated sum and that he would pay the further sum of $50 a week in monthly payments beginning January 1, 1961. In the event of the death of Mr. Fields his obligation to make the weekly payments came to an end except as provided in section (d) of the third paragraph of the agreement. Section (d) reads: ‘ ‘ In the event of the death or such physical incapacitation of William Fields as would result in his permanent inability to meet the $50 weekly payments stipulated above, it is understood and agreed by both parties that a payment of $2,000 to be made within ninety days of death or incapacitation, to Mae Lyons [the claimant]. ”
The executrix contends that the decedent fully performed the obligation imposed by the quoted text by a provision for payment of insurance proceeds. In December, 1960, which was a month after the execution of the agreement, the decedent effected a partial change of beneficiary of an insurance policy by directing that $2,000 of the proceeds be paid to the child, Wright Fields. It is conceded that the insurer paid $2,000 to the general guardian of that infant.
*355 The estate can establish a discharge of the decedent’s obligations under the contract only by proof of performance of his promise. The agreement states that it is “ for the support and maintenance of the children ’ ’, both of whom are named therein-above. It provides for a weekly payment for the support of both children. In the event of the death of the promisor, it is agreed that the weekly payment shall no longer be required but that a lump sum payment of $2,000 shall be made to the claimant. The whole tenor of the agreement makes it clear that the payment is to be made to her for the support of the two children. Payment of that sum to the general guardian of one child does not constitute performance of the agreement.
In the third paragraph of the agreement the decedent agreed to maintain a life insurance policy in the sum of $2,000 on his life and agreed that the child William would be the sole beneficiary of that policy. The claimant argues that in making the other child the beneficiary of a like policy the decedent was going beyond the agreement in an effort to equalize the payments to the two children. We need not speculate as to the decedent’s purpose and intent. Whatever may have been in his mind, the change of beneficiary of insurance policy in December, 1960 does not constitute performance of the promise set forth in section (d) of the third paragraph of the agreement.
The executrix offered in evidence an unsigned typewritten statement found among the decedent’s effects wherein it is said that he intends the insurance payment to be in discharge of his obligation to make the lump sum payment. The statement reflects his recognition that the agreement provides for payment to the mother of the two children whereas he provided that the insurer pay only one. The memorandum states that this method had been agreed to by the claimant. There was no evidence whatever that the claimant had ever agreed to this method of payment. Objection to the reception of the document was sustained. Lacking any proof that the claimant had agreed to a different performance of the terms of the contract, the decedent is bound by the terms of the agreement to pay the sum of $2,000 to the claimant. The agreement provided for payment 90 days after his death. She is entitled to interest on the principal sum from that date.
(4) The final claim is based upon three checks concededly signed by the decedent. The first, dated June 27, 1960, is payable to the order of the claimant in the sum of $200. The second, dated September 20,1960, is in the same amount and is payable to her. The third check is dated September 15, 1960, made payable to Blue Bidge Mountain Academy in the sum *356 of $900 and indorsed to the claimant. No testimony was given with respect to the making and delivery of the checks. The claimant’s possession of the instruments give rise to the inference of valid and intentional delivery by the drawer for a valuable consideration. (Matter of Kolben, 203 Misc. 1012, 1013.) Under the Negotiable Instruments Law the drawer of such an instrument makes certain engagements. However, all three checks were dated and presumably delivered prior to the execution of the agreement on November 25,1960. It is conceded that the account on which the checks were drawn was closed on March 31,1961, which was nine months after the issuance of the first check and less than one month before the decedent’s death. The November agreement provided for the delivery of securities of the value of $15,151, which have been turned over to the claimant. It provides for the weekly payments to begin on January 1, 1961. The seventh paragraph of the agreement provides: ‘ ‘ Each of the parties hereto hereby releases and discharges the other from all claims and rights of every nature whatsoever which either party may have against the other, except the respective claims and rights specifically provided for under the terms and provisions of this agreement.”
No one has offered any proof as to the reason for the making of any of the checks. The claimant’s proof of claim states that when the checks were presented for payment, she was advised that the account had been closed. The account was not closed for nine months after the date of the first check and more than six months after the date of the last one. It is difficult to understand why the checks were not presented promptly for payment. If they had been given for current support and maintenance, as the claimant alleged in her proof of claim, they would not, in the normal course of events, have been held so long before being presented for payment. More than a reasonable time for presentment of the checks had expired before the execution of the November agreement. The agreement provided for delivery of a substantial body of securities to the claimant and for weekly payments beginning the following January. It obviously provided for the past and the future. It then explicitly released and disclaimed the decedent from “ all claims and rights of every nature whatsoever” which the claimant might have against him except such claims and rights as were specifically provided for under the terms of the agreement. The claimant’s own pleading states that these checks were for support and education. The claims based upon them were thus claims not specifically provided in the agreement and the decedent was released and discharged by the claimant in respect of them.
*357 The claims based upon these checks are dismissed.
With respect to the realty located in Texas, the estate has agreed to give to the claimant a statement under oath as to income and expenses of the property.